# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HUMANA INSURANCE COMPANY, a Wisconsin Corporation, et al.,**<br><br>Plaintiffs<br><br>v.<br><br>**TENET HEALTH SYSTEM, a Texas Corporation,**<br><br>Defendant | **CASE NO. 1:16-CV-1450 AWI SAB**<br><br>**ORDER ON PLAINTIFFS' AMENDED EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER SETTING BRIEFING SCHEDULE FOR PRELIMINARY INJUNCTION**<br><br>(Doc. No. 14) |

This is a contractual dispute between the parties, and that is in this Court on the basis of diversity jurisdiction. See Doc. Nos. 1, 13. On September 29, 2016, Plaintiffs filed an ex parte application for a temporary restraining order. See Doc. No. 4. On September 30, 2016, the Court denied Plaintiffs' motion. See Doc. No. 10. However, the Court denied the application without prejudice and required Plaintiffs to file an amended complaint that contained actual causes of action and addressed venue in a less conclusory fashion. See id. On October 4, 2016, Plaintiffs timely filed an amended complaint and an amended ex parte application for a temporary restraining order. See Doc. Nos. 13, 14.[1] Plaintiffs' amended ex parte application seeks a temporary restraining order that would prevent Defendant from cancelling a contractual agreement with Plaintiffs. See Doc. No. 14. Ultimately, it appears that Plaintiffs seek injunctive relief while the parties pursue arbitration, which Plaintiffs initiated prior to filing this suit.

---

[1] The amended complaint now contains causes of action for breach of contract and reformation under California Civil Code § 3399. This cures the defect identified in the Court's prior order because Plaintiffs' amended complaint contained no causes of action, rather it contained only a remedy. See Doc. No. 10 (citing Shamsian v. Atlantic Richfield, Co., 107 Cal.App.4th 967, 984-85 (2003)). The amended complaint also alleges that venue is proper in this district because performance of the contracts at issue is to be at two hospitals located within this district. See Doc. No. 13 at ¶ 14. This allegation, combined with actual causes of action pled in the amended complaint, sufficiently addresses the Court's initial concerns over the original complaint's venue allegations. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986) (holding that venue for breach of contract claims is "the place of intended performance rather than the place of repudiation.").

*Legal Standard*

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. See Fed. R. Civ. Pro. 65. The substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction. Majors v. Jeanes, 48 F.Supp.2d 1310, 1312 n.3 (D. Ariz. 2014); Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F.Supp.2d 1086, 1111 (N.D. Cal. 2012); Bryant v. Matvieshen, 904 F.Supp.2d 1034, 1042 (E.D. Cal. 2012); Welker v. Cicerone, 174 F.Supp.2d 1055, 1062 (C.D. Cal. 2001). A plaintiff seeking a preliminary injunction or a restraining order must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008); Angelotti Chiropractic v. Baker, 791 F.3d 1075, 1081 (9th Cir. 2015). If a moving party has only shown "serious questions going to the merits," then an injunction may issue if the moving party meets the irreparable harm requirement, meets the public interest requirement, and shows that the balance of hardships "tips sharply" in his favor. Angelotti, 791 F.3d at 1081. However, if a moving party fails to show that he has at least "some chance on the merits," then no injunction will issue. Developmental Servs. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2012). "Injunctive relief . . . must be tailored to remedy the specific harm alleged." Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011). Under Rule 65(b), a court may issue an *ex parte* temporary restraining order only if: (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Fed. R. Civ. Pro. 65(b); Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).

*Background*

In order to retain or recruit enrollees during the Open Enrollment period, a health benefit plan has to have a contract with health care providers and hospitals in order to be participating,

and thus qualified to market coverage to enrollees.  In the beginning of 2016, Plaintiffs and Defendant entered the last year of a fee-for-service contract (the "FFS"), which covered Plaintiffs' Medicare Advantage enrollees in Stanislaus and San Joaquin Counties.  See Arjoyan Dec. ¶ 2.  Two hospitals were covered by the FFS, Doctors Hospital of Manteca, Inc. (dba Doctors Hospital of Manteca) and Doctors Medical Center of Modesto, Inc. (dba Doctors Medical Center of Modesto).  See id.  The FFS was to expire, if not terminated sooner or automatically renewed, on September 30, 2016.  See id. at ¶ 3.  The notice of non-renewal had to be given ninety days in advance of the expiration date.  See id.  If neither party provided written notice, then the FFS would automatically renew for another year.  See id.

During the course of negotiations for new agreements for the coming year (2017), Plaintiffs made it clear to Defendant (and Defendant understood) that, unless the parties agreed to a capitated agreement,[2] Plaintiffs would withdraw from the markets in Stanislaus and San Joaquin Counties.  See id. at ¶ 7.  By March 2016, the parties had agreed that even though there were negotiations ongoing between the parties at a national level, capitated agreements for Stanislaus and San Joaquin Counties would be an exception and thus "carved out" from the national discussions.  See id. at ¶ 5.

From March to May, the parties exchanged draft standalone agreements for Stanislaus and San Joaquin Counties.  See id. at ¶¶ 7, 8, 9.  The then in force FFS was used as a template for the new capitated agreements.  See id. at ¶ 8.  An error in the commencement dates of the capitated agreements occurred because the end term of the FFS (September 30, 2016) was included.  See id. at ¶ 9.  This term was inadvertently incorporated from the FFS template, despite the parties' mutual intent that the capitated agreements be effective at the start of 2017.  See id.  Neither party noticed the September 30 term provisions in the drafts of the capitated agreements.  See id. & ¶ 10.

On May 12, 2016, Defendant signed final versions of the capitated agreements, which still

---

[2] A "capitated agreement" is one in which a health care provider is paid by the insurer on a monthly basis for each beneficiary enrolled in the plan.  See Doctors Med. Ctr. of Modesto v. Kaiser Foundation Health Plan, Inc., 989 F.Supp.2d 1009, 1013 (E.D. Cal. 2013).  The amount of the monthly payment is the same regardless of the number of times an enrollee needs care.  See id.

3

contained the erroneous September 30 termination date. See id. at ¶ 11. The signed documents were then forwarded to Plaintiffs. At that time, Plaintiffs discovered the erroneous September 30 term. See id. at ¶ 12. Plaintiffs corrected the error to reflect the correct January 1, 2017 commencement date, and signed the capitated agreements ("CA's"), and returned the CA's to Defendant. See id. & ¶ 13.

On June 15, 2016, Defendant sent out a sweeping notice of non-renewal which included its hospitals in Stanislaus and San Joaquin Counties. See id. at ¶ 16. This notice would have the effect of terminating the CA's before the CA's were ever intended to become operative.

Upon receipt of the CA's, Defendant noticed the correction. In a June 17, 2016 email, Defendant protested the correction, but acknowledged that an error was made by both sides, and that the corrected version with a January 1, 2017 commencement date reflected the intent of the parties. See id. at ¶¶ 13, 14 & Ex. K at Bates Nos. K-341 to K-342.

Defendant has refused to acknowledge that the CA's should be unaffected by its notice of non-renewal.

On September 19, 2016, Plaintiffs initiated binding arbitration with respect to the CA's. See Doc. No. 13 at Ex. A. On September 29, 2016, Plaintiffs filed this lawsuit.

*Discussion*

The Court will examine each consideration separately.

First, Plaintiffs have shown a likelihood of success. Plaintiffs have submitted e-mail correspondences that indicate a drafting error occurred within the CA's, and that the parties signed the CA's without detecting the drafting error. Despite the acknowledged error, Defendants appear to be utilizing the erroneous termination provisions of the CA's. Based on the emails (Ex. K), it appears at this point that Plaintiffs will likely succeed on their claims. See Hess v. Ford Motor Co., 27 Cal.4th 516, 524 (2002).

Second, at this time, Plaintiffs have demonstrated irreparable harm. Cf. Fairfield County Med. Assn. v. United Healthcare of New England, 985 F.Supp.2d 262, 271-72 (D. Conn. 2013) (in a case in which a healthcare plan's attempted termination of physicians from the plan's Medicare Advantage program, finding irreparable harm because of disruption of physicians' relationships

with Medicare Advantage patients, loss of goodwill and reputational injury, and loss of ability to compete in the market for provision of Medicare services). At this point, it appears that the CA's were meant to address coverage beginning in 2017 as a replacement for the FFS. Thus, it also appears that the FFS was intended to be renewed on September 30, but would only be in force until January 1, 2017. With this understanding of what the Court takes to be Plaintiffs' position, there is significant uncertainty as to Plaintiffs' 5,000 Medicare Advantage enrollees' medical coverage. If the status quo is not maintained, the 5,000 enrollees will be affected because the two hospitals (as of September 30) are no long "in network," and it is possible that the enrollees may no longer be able to continue to receive care at the two hospitals. See Arjoyan Supp. Dec. ¶¶ 2, 4, 5. Also, the change of "network status" prior to 2017 would affect Plaintiffs' goodwill with its enrollees, and, because the Medicare Open Enrollment Period begins on October 15, 2016, Plaintiffs' ability to solicit new enrollees and keep its existing enrollees in Stanislaus and San Joaquin Counties appears to be significantly compromised. See Fairfield County, 985 F.Supp.2d at 271-72 (discussing cases in which irreparable harm was found *inter alia* due to loss of goodwill, reputational injury, and exclusion from certain business opportunities); Arjoyan Dec. ¶ 17.

Third, it appears at this point that the balance of equities favor Plaintiffs. Plaintiffs indicate that Defendant will be compensated either through capitated payments or fees for service at the two hospitals with respect to the 5,000 enrollees (depending on when the dispute is resolved). Any harm that Defendants could suffer as a result of this temporary restraining order should be covered by Plaintiffs' proposed $5 million bond.

Fourth, it appears at this point that the public interest favors a restraining order. The evidence submitted indicates that the parties had agreed to the CA's, but through a mutual mistake, an unintended termination provision was inserted within the agreements. The negotiations appear to have been intended to "carve out" the two specific hospitals. See Arjoyan Supp. Dec. ¶ 3. Had Plaintiffs not believed that the CA's had been agreed, Plaintiffs would have taken significantly different actions. See id. at ¶ 2. Instead, a situation has now developed where the nearly 5,000 enrollees will be able to utilize the two hospitals as "out of network" providers (if at all), which could be cost prohibitive. See id. at ¶ 4.

Finally, it appears that the parties have been in negotiations concerning the early termination and the CA's, including up until the point that Plaintiffs filed this lawsuit. See Arjoyan Dec. ¶ 19. Plaintiffs' counsel has stated that he has been providing notice of Plaintiffs' intent and copies of current Court filings to Defendant and to the attorney whom he believes will represent Defendant in this Court. See Doc. Nos. 5, 12. Considering the status of the two hospitals as arguably being "out of network," the possible effect on Plaintiffs' goodwill, the 5,000 current enrollees who would be affected by this status, and the open enrollment period, issuing an ex parte temporary restraining order is appropriate.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' amended application for an ex parte temporary restraining order (Doc. No. 14) is GRANTED;

2. Defendant is TEMPORARILY RESTRAINED from deeming its contracts with Plaintiffs concerning Doctors Hospital of Manteca, Inc. (dba Doctors Hospital of Manteca) and Doctors Medical Center of Modesto, Inc. (dba Doctors Medical Center of Modesto), to be terminated effective September 30, 2016, and from taking any actions or making any statements to the effect that said contracts have been terminated;

3. As soon as possible, but no later than 24 hours from the filing of this order,[3] Plaintiffs are directed to post a bond for the benefit of Defendant in the amount of $5 million;

4. If Plaintiffs do not post a bond within the time specified, this temporary restraining order will be dissolved;

5. This order will expire in 14 days after entry;

6. This order is issued at 3:25 p.m. on October 4, 2016;

7. Pursuant to Local Rule 231(c)(8), if Defendant so chooses, Defendant may apply to the Court for modification or dissolution of this temporary restraining order on 2 days notice;

8. A hearing on whether a preliminary injunction should issue will be held on October 17,

---

[3] It is the Court's understanding that Plaintiffs have obtained the $5 million bond. See Doc. No. 4-3.

      2016 at 1:30 p.m.;

9. Defendant shall file either an opposition or notice of non-opposition to the granting a preliminary injunction on or by 4:00 p.m. October 10, 2016;[4]

10. Plaintiffs shall file a reply to any opposition on or by 2:00 p.m. on October 13, 2016; and

11. Plaintiffs shall forthwith serve a true and correct copy of this order on Defendant by personal deliver and file a proof of service of the same within 24 hours.

IT IS SO ORDERED.

Dated:   October 4, 2016                        _____
                                                SENIOR DISTRICT JUDGE

---

[4] October 10, 2016 is Columbus Day, and the Clerk's office is closed. However, through the Court's electronic filing system, Defendants have the ability to file documents with the Clerk on holidays and the weekend. Therefore, Defendant shall file the appropriate documents through Court's electronic filing system.