UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMANA INSURANCE COMPANY, a Wisconsin Corporation, et al.,<br><br>Plaintiffs<br><br>v.<br><br>TENET HEALTH SYSTEM, a Texas Corporation,<br><br>Defendant | CASE NO. 1:16-CV-1450 AWI SAB<br><br>**ORDER EXTENDING DURATION OF TEMPORARY RESTRAINING ORDER AND ORDER TRANSFERRING MATTER TO THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION** |

This is a contractual dispute between Plaintiffs Humana Insurance Co., Humana Health Plan, Inc., Humana Health Plan of California, Inc., and Arcadian Health Plan, Inc. (collectively "Humana"), and Defendant Tenet Health System ("Tenet"). On October 4, 2016, the Court granted Humana's second application for an ex parte temporary restraining order. See Doc. No. 18. The Court set a briefing schedule and a hearing date for Humana's motion for a preliminary injunction. See id. On October 14, 2016, the Court took the matter under submission. For the reasons that follow, the temporary restraining order will be extended and this case will be transferred to the Northern District of Texas.

**PRELIMINARY INJUNCTION FRAMEWORK**

Federal Rule of Civil Procedure 65 governs preliminary injunctions. See Fed. R. Civ. Pro. 65. A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on

the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008); Angelotti Chiropractic v. Baker, 791 F.3d 1075, 1081 (9th Cir. 2015); Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015). The first *Winter* factor is the most important consideration. Garcia, 786 F.3d at 740. If a moving party has only shown "serious questions going to the merits," then an injunction may issue if the moving party meets the irreparable harm requirement, meets the public interest requirement, and shows that the balance of hardships "tips sharply" in his favor. Angelotti, 791 F.3d at 1081. However, if a moving party fails to show that he has at least "some chance on the merits," then no injunction will issue. Developmental Servs. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2012). In fact, if a plaintiff does not make a sufficient showing of a likelihood of success on the merits, courts need not consider the other *Winter* factors. Garcia, 786 F.3d at 740.

## BACKGROUND

In the beginning of 2016, Humana and Tenet entered the last year of a national fee-for-service contract (the "FFS"), which covered *inter alia* Plaintiffs' Medicare Advantage enrollees in Stanislaus and San Joaquin Counties. See Arjoyan Dec. ¶ 2. Two hospitals in Stanislaus and San Joaquin Counties were covered by the FFS, Doctors Hospital of Manteca and Doctors Medical Center of Modesto. See id. The FFS was to expire, if not terminated sooner or automatically renewed, on September 30, 2016. See id. at ¶ 3. The notice of non-renewal had to be given ninety days in advance of the expiration date. See id. If neither party provided written notice, then the FFS would automatically renew for another year. See id.

During the course of negotiations for new agreements for the coming year (2017), Humana made it clear to Tenet (and Tenet allegedly understood) that, unless the parties agreed to a capitated agreement,[1] Plaintiffs would withdraw from the markets in Stanislaus and San Joaquin

---

[1] A "capitated agreement" is one in which a health care provider is paid by the insurer on a monthly basis for each beneficiary enrolled in the plan. See Doctors Med. Ctr. of Modesto v. Kaiser Foundation Health Plan, Inc., 989 F.Supp.2d 1009, 1013 (E.D. Cal. 2013). The amount of the monthly payment is the same regardless of the number of times an enrollee needs care. See id.

1  Counties.  See id. at ¶ 7.  By March 2016, the parties had agreed that even though there were
2  negotiations ongoing between the parties at a national level, capitated agreements for Stanislaus
3  and San Joaquin Counties would be an exception and thus "carved out" from the national
4  discussions.  See id. at ¶ 5.

5  From March to May 2016, the parties exchanged draft standalone agreements for
6  Stanislaus and San Joaquin Counties.  See id. at ¶¶ 7, 8, 9.  The still in force FFS was used as a
7  template for the new capitated agreements.  See id. at ¶ 8.  Humana contends that an error in the
8  commencement and termination dates of the capitated agreements occurred because the relevant
9  dates from the FFS's dates were included.  See id. at ¶ 9.  Like the FFS, the draft capitated
10  agreements indicate that they will commence on June 21, 2013 and terminate on September 30,
11  2016 ("the June/September Term"), if not terminated sooner or automatically renewed.  See id. &
12  Ex. G at § 6.1; Lynn Dec. Ex. 1 at § 6.1.  Humana contends that this provision was inadvertently
13  incorporated from the FFS template, despite the parties' mutual intent that the capitated
14  agreements be effective at the start of 2017.  See Arjoyan Dec. ¶ 9.  Humana contends that neither
15  party noticed the June/September Term in the drafts of the capitated agreements.  See id. & ¶ 10.
16  In contrast, Tenet contends that June/September Term was included in the drafts of the capitated
17  agreements, and that Tenet intended to retain the ability to terminate the capitated agreements in
18  the event that negotiations over the renewal of the national contract failed.  See Lynn Dec. ¶ 5.

19  On May 12, 2016, Tenet signed final versions of the capitated agreements ("CA's"), which
20  still contained the June/September Term.  See Arjoyan Dec. ¶ 11; Lynn Dec. ¶ 6.  The signed
21  documents were e-mailed to Humana on May 14, 2016.  See Lynn Dec. ¶ 6.  Humana noticed the
22  June/September Term in the CA's, "corrected [the CA's] to conform to the parties' intention," i.e.
23  included commencement dates of January 1, 2017, and executed the CA's on May 16, 2016.  See
24  Arjoyan Dec. ¶ 12.  Humana then transmitted the executed CA's to Tenet on June 16, 2016.  See
25  id. at ¶ 13.

26  On June 15, 2016, Tenet sent out a sweeping notice of non-renewal which included its
27  hospitals in Stanislaus and San Joaquin Counties.  See id. at ¶ 16; Lynn Dec. ¶ 7.  This notice
28  applied to all agreements between Tenet and Humana, including the CA's.  See Lynn Dec. ¶ 7.

On June 16, 2016, Humana contacted Tenet to advise that it had caught an error in an exhibit to the CA's concerning the Division of Financial Responsibility ("DOFR") pages. See Lynn Dec. ¶ 8. Tenet agreed to correct the erroneous DOFR pages. See id.

Tenet received the signed CA's from Humana at 7:52 p.m. on June 16, 2016. See id. at ¶ 10. In contrast to the DOFR issue, Humana did not contact Tenet regarding the June/September Term. See id. at ¶¶ 8, 10. Upon receipt of the CA's, Tenet noticed the change Humana had made to the June/September Term. See id. at ¶ 12. On June 16 and 17, 2016, Tenet sent Humana e-mails that protested the changes. See Arjoyan Dec. ¶¶ 12, 13; Lynn Dec. ¶¶ 12-16. Humana contends that the e-mail strings include an acknowledgement by Tenet that an error was made by both sides, and that the corrected version with a January 1, 2017 commencement reflected the intent of the parties. See Doc. No. 14 at 3:16-22; Arjoyan Dec. ¶¶ 13, 14 & Ex. K at Bates Nos. K-341 to K-342. However, Tenet contends that the language in the e-mails identified by Humana was not written by Tenet, but was actually written by Humana. See Lynn Dec. ¶¶ 16-18 & Ex. 2.

Additional negotiations continued, but were unfruitful. See id. at ¶ 19.

On September 19, 2016, Humana initiated arbitration with respect to the CA's. See Doc. No. 13 at Ex. A.

On September 29, 2016, Humana filed this lawsuit and moved for an ex parte temporary restraining order. See Doc. No. 1. On September 30, 2016, the Court denied the ex parte request in its entirety, but did so without prejudice. See Doc. No. 10. On October 4, 2016, Humana filed an amended complaint, a response to the Court's September 30, 2016 order, and a second ex parte application for a temporary restraining order. The Court granted Humana's second request for an ex parte temporary restraining order, and set a briefing schedule. See Doc. No. 18.

## **PLAINTIFF'S MOTION**

*Plaintiff's Arguments*

From the temporary restraining order application, Humana argues that each of the relevant considerations favor granting preliminary injunctive relief. First, there is a likelihood of success on the merits of the reformation claim. Tenet's representative admits that the mutual intent of the

parties was for the CA's to commence on January 2017, and that the June/September Term was a mutual mistake. This admission shows that there is a strong likelihood of success. See Doc. No. 14 at 3:16-22 (citing Arjoyan Dec. Ex. K at K-341 to K-342).

Second, Humana argues that without an injunction there will be irreparable harm. Nearly 5,000 Medicare Advantage enrollees will no longer have a readily accessible contracted hospital to which they can be conveniently referred to for care, and may suffer a disruption in services and physician relationships. Further, Humana's goodwill and reputation would be harmed. Humana's ability to manage and maintain the existing 5,000 enrollees, as well as to solicit new enrollees will be crippled because there will be no contracted hospitals. This will negatively impact Humana's reputation and ability to compete for Medicare enrollees.

Third, Humana argues that the balance of equities tips in its favor. The status quo would merely be preserved and the 5,000 enrollees could continue to use the two affected hospitals. The only harm that could fall upon Tenet would be monetary in nature. The posted $5 million bond should cover any of Tenet's losses, if the arbitrator decides against Humana.

Fourth, Humana argues that the public interest favors a preliminary injunction. There is an acute public interest in assuring that medical needs of the elderly and disabled will be met through Medicare Advantage policies.

Additionally, as part of a response to the Court's order denying the first restraining order application, Humana anticipates that Tenet will rely on a forum selection clause in the CA's. However, Humana argues that such reliance is misplaced because the relevant paragraph governs only the location of arbitration, it does not govern were a lawsuit may be filed.

Finally, as part its reply brief, Humana argues that § 12.3 of the CA's contains a permissive forum selection clause with respect to judicial proceedings. Reading the clause as mandatory does not make sense in light of § 12.3(c), which states that an arbitration award may be entered in any court having jurisdiction. If Tenet's interpretation is correct, then an arbitration award should be entered in Dallas County. As a permissive forum selection clause, the case should not be transferred because Tenet did not request transfer and has made no showing to warrant transfer.

*Defendant's Opposition*

Tenet argues that a preliminary injunction is inappropriate. First, Tenet argues that this Court is not the proper forum for this dispute. Section 12.3 of the CA's contain a mandatory forum selection clause in which the parties designated Dallas County, Texas as the place of exclusive jurisdiction and venue. This clause should be enforced, and this case dismissed.

Second, the *Winter* factors do not favor a preliminary injunction. There is no likelihood of success because the portion of the e-mail that allegedly contained an admission by Tenet does not actually contain an admission. The language cited by Humana and relied upon by the Court was written by Humana personnel, not Tenet personnel. Additionally, there is no irreparable harm because Humana delayed in raising the issue with Tenet and in seeking appropriate relief, can be compensated through damages for any lost income, is responsible for any lapse in status between in-network and out-of-network status, and any harm to goodwill is speculative.[2]

*Discussion*

1.  Venue

Under a section entitled "Binding Arbitration," the CA's contain a section that relates to venue. In pertinent part, § 12.3 of the CA's reads:

> The parties are agreed that any Dispute under this Agreement shall be subject to the exclusive jurisdiction of and venue in Dallas County, Texas provided, however, this provision shall not effect the governing law of the contractual dispute in accordance with the location of the Hospital and is intended only [to] identify the location for the resolution of any dispute. The parties hereto waive any objection which it may have as to the *laying of venue of any proceeding brought in such court*, waive any claim that such proceeding has been brought in an inconvenient forum, and further waive the right to object, with respect to such proceedings, that such court does not have jurisdiction over such party.

Lynn Ex. 1 at p.008, § 12.3 (emphasis added).[3] Section 12.3 also contains subsections regarding the arbitration process, the expense of compelling arbitration, and judgment on the decision and award. See id. at §§ 12.3(a), (b), (c). Subsection C provides, "Judgment upon the decision and

---

[2] Tenet makes additional arguments regarding venue and emergency relief from the arbitrator. However, given the Court's resolution of this case, it is unnecessary to address these arguments.

[3] The Court notes that the CA's provide that the headings are "for reference purposes only and shall not be considered a part of the [CA's] in construing or interpreting any of its provisions." Arjoyan Dec. Ex. G at § 26.3; Lynn Dec. Ex. 1 at § 26.3.

6

1  award rendered by an arbitrator may be entered in any court having jurisdiction thereof." Id. at
2  § 12.3(c).
3        The Court agrees with Humana that the parties agreed to have their disputes arbitrated, and
4  that § 12.3 sets venue for any arbitration in Dallas County, Texas. However, the Court disagrees
5  with Humana's first position that § 12.3 applies only to arbitrations. The plain language of § 12.3
6  does not support Humana. As italicized above, § 12.3 provides that the parties waive venue
7  objections to "such court." The term "court" does not appear prior to the italicized sentence. But,
8  the preceding sentence sets "exclusive jurisdiction and venue" for resolving disputes under the
9  CA's in Dallas County, Texas. The only reasonable reading of § 12.3 is that "such court" refers to
10 the courts in Dallas County, Texas. Cf. Monarch Nut Co., LLC v. Goodnature Prods., Inc., 2014
11 U.S. Dist. LEXIS 168276, *7 (E.D. Cal. Dec. 4, 2014) (noting that "courts who have examined
12 forum selection clauses that designate a particular . . . county . . . for the place to 'settle' all
13 disputes, but that do not reference 'courts,' find such clauses to be enforceable."). So reading
14 "such court," § 12.3 serves a dual function of setting venue for any court proceeding in Dallas
15 County, Texas, and waiving any party's objection to venue in a court located in Dallas County,
16 Texas. If § 12.3 were intended to only apply to arbitrations, then there would be no need to refer
17 to a "court." Moreover, the phrase "any proceeding brought in such court" is extremely broad. By
18 definition, "any proceeding" would seem to encompass every matter that can be filed within a
19 court, including proceedings such as this, which is primarily to preserve the status quo pending
20 arbitration. Including this language, which creates no limitation on the types of court proceedings
21 that would fall under § 12.3, is not consistent with an intent to limit § 12.3 to arbitrations. Finally,
22 in the absence of contrary language within the CA, it is counterintuitive that the venue for an
23 arbitration would be Dallas County, but that full litigation in court could occur in any State or
24 county.[4] Section 12.3 is a forum selection clause for both arbitration and court proceedings.

---

[4] While § 12.3 primarily deals with arbitration, the inclusion of a provision that relates to court proceedings indicates that the parties intended for the merits of any dispute to be determined in Dallas County, Texas. The effect of § 12.3 would seem to be that if a party filed a legal proceeding in Dallas County, Texas, venue would be correct. However, the non-filing party could either move to compel arbitration, or forego arbitration and litigate in the Dallas County court. A further effect would be that precisely this type of case (one to preserve the status quo pending arbitration) is to be filed within Dallas County.

7

Generally, if a forum selection clause specifies venue with mandatory language, the clause will be enforced. See Atlantic Marine Constr. Co. v. United States Dist. Ct., 134 S.Ct. 568, 581 (2013); see also Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). Here, § 12.3 expressly states that "exclusive jurisdiction and venue shall be in Dallas County, Texas." This is mandatory language. See id.

Humana argues, however, that the forum selection clause is permissive.[5] The Court cannot agree. The phrase "such court" in § 12.3 is given meaning by the previous sentence. That previous sentence expressly places "exclusive jurisdiction and venue" in Dallas County, Texas. Therefore, "such court" refers to courts in Dallas County, Texas, and those are the courts with exclusive jurisdiction and venue. It is unclear why the Court should accept "Dallas County, Texas" as modifying "such court," but not accept "exclusive jurisdiction and venue" as modifying "such court." In the absence of other language, it does not make sense that these parties would intend that arbitration occur in Dallas County, Texas in order for the merits of a dispute to be resolved, but also intend for full blown litigation to occur in any state. It is apparent that § 12.3 is intended to insure that any dispute under the CA's be resolved in Dallas County, Texas, be it through a court or an arbitration. Cf. Monarch Nut, 2014 U.S. Dist. LEXIS 168276 at *7 (and cases cited therein) (discussing cases in which forum selection clauses were enforced where clause stated that a dispute was to be settled in a particular county, and without any reference to courts).

Humana also points to § 12.3(c) in support of its argument that the clause is permissive. However, § 12.3(c) covers a very specific situation – what to do once the arbitrator has made a decision. Section 12.3(c) envisions a final arbitration award, which means it also envisions that the parties will have expended substantial resources and reached a resolution on the merits. All that would be left to do is enforce the award. Depending on the nature of the dispute, it may be easier to enforce the award in a court that is located outside of Dallas County. Confirming a

---

[5] If the forum selection clause is permissive, the clause will not be enforced. See In re Oceanside Partners, 2016 U.S. App. LEXIS 11235, *2 (9th Cir. June 17, 2016) ("We enforce only those forum selection clauses that 'contain language that clearly designates a forum as the exclusive one.'").

8

binding arbitration award involves different procedures and determinations from resolving the merits of the underlying dispute. It is not nonsensical to exempt this one particular type of court proceeding from the remainder of the forum selection clause. Humana cites no authority for the proposition that excepting one specific type of proceeding, especially a proceeding to confirm/enforce a final arbitration award, transforms an otherwise mandatory forum selection clause into a completely permissive one.

In sum, the § 12.3 forum selection clause designates the courts in Dallas County, Texas as having exclusive jurisdiction and venue over all court proceedings, save for proceedings relating to a final arbitration award. Because this proceeding has nothing to do with an actual arbitration award, § 12.3 is a mandatory clause with respect to this case. See Northern Cal., 69 F.3d at 1037.

The Supreme Court has clarified that, when a forum selection clause points to a particular federal district, the proper mechanism for enforcing the clause is 28 U.S.C. § 1404(a).[6] Atlantic Marine Constr. Co. v. United States Dist. Ct., 134 S.Ct. 568, 579 (2013). However, when there is an attempt to enforce a forum selection clause, the traditional § 1404(a) framework changes. See id. at 581. The plaintiff's choice of forum is given no weight, the "private interest factors" are deemed to weigh in favor of the forum identified in the forum selection clause, and a transfer will not carry the original venue's choice of law rules. See id. at 581-82. A valid forum selection clause is "given controlling weight in all but the most exceptional circumstances." Id. at 581. The party acting in violation of a forum selection clause "bears the burden of showing that the public-interest factors overwhelmingly disfavor a transfer." Id. at 583.

Humana makes two arguments against transferring this matter. First, Humana argues that Tenet has not requested a transfer. It is true that Tenet's opposition has not expressly requested a transfer but does request dismissal. However, Tenet's opposition is clearly invoking the forum selection clause and requesting the Court to enforce it. See Doc. No. 22 at 1:15-2:3, 5 at n.2, 7:8-9:5 & n.5. Per *Atlantic Marine*, the forum selection clause is enforced through 28 U.S.C. § 1404.

---

[6] Section 12.3 sets "exclusive jurisdiction and venue *in* Dallas County, Texas." (emphasis added). Therefore, the Court reads "such court" as referring to courts in Dallas County, Texas, which means that state and federal courts in Dallas County are encompassed by § 12.3. See Arrington v. Everett Fin., Inc., 2015 U.S. Dist. LEXIS 66020, *7-*8 (W.D. Tex. May 20, 2015). The federal Northern District of Texas has a court in Dallas County. See http://www.txnd.uscourts.gov/location/dallas.

1  Because Tenet is relying on the forum selection clause and requesting that it be enforced, the
2  Court finds Tenet's failure to expressly request transfer is immaterial.  Second, Humana argues
3  that Tenet has not addressed the numerous public and private interest factors considered under
4  § 1404(a), and thus, has not met its burden of demonstrating that transfer is proper.  However,
5  *Atlantic Marine* is directly contrary to this argument.  Tenet has demonstrated that there is valid
6  and mandatory forum selection clause.  Because Tenet has done so, the burden shifted to Humana
7  to demonstrate that the "public-interest factors overwhelmingly disfavor a transfer."  Atlantic
8  Marine, 134 S.Ct. at 583.  Although Humana lists public interest factors in its reply, it does not
9  actually apply those factors to this case.  Merely listing the public interest factors does not in any
10 way demonstrate that those factors "overwhelmingly disfavor a transfer."

11 Because Tenet has shown that there is a valid and mandatory forum selection clause, and
12 Humana has failed to show that the public interest factors overwhelmingly disfavor a transfer, it is
13 appropriate to enforce the § 12.3 forum selection clause and transfer this case to the Northern
14 District of Texas – Dallas Division.

15     2.    Preliminary Injunction

16 In its second ex parte application for a temporary restraining order, Humana argued that it
17 had a likelihood of success on the merits because Tenet essentially admitted to a mutual mistake or
18 oversight.  See Doc. No. 14 at 7:8-22.  Humana cited two pages in support of this assertion, K-341
19 and K-342.  See id.  The Court cited and relied on these two pages in its order granting Humana
20 temporary relief.  See Doc. No. 18.  Humana provided pages K-341 and K-342 to the Court in a
21 black and white copy.  See Doc. No. 6-11.  Tenet has provided the relevant e-mail string in color,
22 and explains that the black and blue text was composed by Tenet, and the red text was composed
23 by Humana.  See Lynn Dec. ¶ 18.  The critical language that was cited to, and relied upon by, the
24 Court is in red text.  See id. & Ex. 2 at 001-002.  In the reply declaration, Humana admits that the
25 key language was written by Humana and not Tenet, but that this representation was based on an
26 error by Tenet personnel who only reviewed a black and white copy of the e-mail.  See Doc. No.
27 28 at 9:27-10:3; see also Arjoyan Reply Dec. ¶ 2.  By error or otherwise, the original factual basis
28 for the temporary restraining order is infirm.

Nevertheless, Humana's reply makes additional arguments and specifies different evidence than that which was initially raised in the second ex parte application regarding a likelihood of success. These arguments are not insubstantial, and, unfortunately, Tenet has not had a fair opportunity to respond to Humana's new arguments. Additionally, although not necessarily highlighted by Humana, § 6.1 of the "original CA's", i.e. the CA's that were signed by Tenet but not returned by Humana, had a start date of June 2013, yet only included pay rates for 2017 and 2018. See Arjoyan Dec. Ex. G at § 6.1 & Attachment A. This arguably means that the CA's would have immediately replaced the FFS as to the two relevant hospitals (possibly retroactively), but no capitated pay rates would be available until 2017. This scenario seems counterintuitive, and contrary to Tenet's position.

The Court finds itself in a unique situation. As explained above, there is a mandatory forum selection clause that has been invoked by Tenet, which means that the Court is obligated to transfer this case. See Atlantic Marine, 134 S.Ct. at 581; Docksider, 875 F.2d at 764. Because the Court is obligated to transfer, it should refrain from making any further substantive determinations. However, there is a pending motion for a preliminary injunction. Rule 65(b) permits the Court, for good cause, to extend the expiration date of a temporary restraining order. See Fed. R. Civ. P. 65(b)(2). Considering the initial erroneous reliance on inaccurate facts, the new arguments raised and the additional evidence highlighted in the reply, the serious questions going to the issue of success on the merits, and the mandatory and imminent transfer of this case, the Court finds that there is good cause to extend the temporary restraining order. The Court believes that extending the temporary restraining order and requiring a response from Tenet that addresses Humana's reply (and the Court's concerns regarding the § 6.1 June 2013 start date and Attachment A pay rates), while simultaneously transferring the matter to the Northern District of Texas, is the appropriate course. This solution provides the Northern District of Texas and the parties with additional time, and gives the Northern District (which has exclusive venue) the opportunity to make substantive determinations regarding a preliminary injunction.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. By October 21, 2016, Tenet shall file a response to Humana's October 13, 2016 reply and to the Court's concerns outlined above regarding the June 2013 commencement date and the Attachment A pay rates;

2. Pursuant to Federal Rule of Civil Procedure 65(b)(2), the temporary restraining order issued by this Court on October 4, 2016 (Doc. No. 18) is extended for an additional fourteen (14) days beyond October 18, 2016;

3. Tenet's request to enforce the forum selection clause is GRANTED; and

4. The Clerk shall TRANSFER this case forthwith to the <u>Dallas Division</u> of the federal Northern District of Texas.

IT IS SO ORDERED.

Dated:   October 17, 2016                             _____
                                                      SENIOR DISTRICT JUDGE